IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| THEDRAL R. HARDRIDGE, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Case No. 16-00997-CV-W-ODS |
|  | ) |  |
| JOE PICCININI, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

<u>ORDER AND OPINION GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Pending is Defendants Jen-I E. Pulos and Chimezie Akanuligo's Motion for Summary Judgment. Doc. #83. For the following reasons, Defendants' motion for summary judgment is granted.

## I. BACKGROUND

In October 2014, Plaintiff Thedral Hardridge was admitted to the Jackson County Department of Corrections ("JCDC") on charges of Abuse or Neglect of A Child – Serious Physical Injury. Doc. #83-2. Plaintiff remains incarcerated at a JCDC facility. Doc. #66; Doc. #84-3.

JCDC has a grievance procedure, which permits inmates to "seek formal resolutions, decisions, or answers to serious issues or complaints regarding the conditions of their confinement." Doc. #83-4, at 1. Pursuant to the procedure, an inmate first seeks informal resolution of a non-emergency matter. *Id.* at 2, 5. , and if that does not work, files a formal grievance. *Id.* at 2. "The grievance must be filed within ten (10) days of the occurrence or discovery of the cause of the grievance…." *Id.* at 1, 5. If dissatisfied with the disposition of a grievance, "the inmate may submit a written appeal within five (5) days receipt of the adverse disposition." *Id.* at 4-5. Upon receipt of the appeal, the Director of Corrections ("Director") designates a respondent, who is responsible for "promptly and thoroughly investigating the appeal and submitting

a written disposition to the Director." *Id*. Unless otherwise explained to the inmate, the response must be provided within ten days of the Director's receipt of the appeal. *Id*.

Between December 1, 2014, and June 15, 2015, Plaintiff filed several requests for administrative remedies. Doc. #1-1, at 3-7; Doc. #83-1, at 4; Docs. #83-5, #83-6, #83-7, #83-10. On January 29, 2015, Plaintiff submitted a formal grievance related to events that occurred on November 12, 2014. Doc. #1-1, at 1; Doc. #83-8. The formal grievance was received by the Director on March 9, 2015. *Id*. Ten days later, a response was provided: "Sir, the above listed incidents were caused by you. Each time you placed yourself in each predictament [sic]. Captain Smith, the JCDC Support Administrator, has already explained this to you…. I find this grievance totally unfounded. *Id.* On June 4, 2015, Plaintiff appealed his formal grievance. Doc. #1-1, at 2; Doc. #83-9. This appeal was received by the Director on June 8, 2015. *Id*. On June 18, 2015, Plaintiff was informed that the "investigation will continue," and he will be notified of the outcome of the investigation. *Id*.

On June 29, 2015, George Indelicato, Acting Operation Support Administrator, responded to Plaintiff's appeal. Doc. #1-1, at 16; Doc. #83-14. With regard to the events that occurred on November 12, 2014, Indelicato was "unable to obtain any concert [sic] evidence of staff physical abuse toward inmate Hardridge. No recorded footage was archived or downloaded." *Id.* But Indelicato obtained six reports from staff documenting the November 12, 2014 incident. Doc. #1-1, at 8-16; Doc. #83-14; Doc. #83-15. The reports indicate Plaintiff "began the incident by pulling the sprinkler head in his cell causing a flood…. Upon DCT staff entering the inmate's cell,…the inmate became combative and argumentative and began to resist staff." *Id*. As a result, the staff had "to place the inmate to the cell floor which could have caused the injuries described." *Id*. Plaintiff sustained lacerations on his left eye and chin. *Id*.; *see also* Doc. #83-13. He received sutures from the emergency room. *Id*. Indelicato rejected Plaintiff's grievance "due to his allegations of staff physical abuse being unfounded." *Id*.

With regard to the events that transpired on November 12, 2014, Plaintiff testified during his deposition that he told JCDC staff members he would not be going back to his cell. Doc. #83-17, at 8-9. After being placed back in his cell, Plaintiff admitted he began yelling, "my attorney [is] gonna whip [your] ass…." *Id*. at 10. He then broke the

2

sprinkler head in his cell: "I took my cup, and I started hitting [the sprinkler head] with my cup, hitting the tip of it with my cup, and it just popped and started spraying the room with water." *Id.* at 11. The water began pouring into his cell, and "pretty much flooded the whole module almost." *Id.* at 12. A few minutes after Plaintiff broke the sprinkler head, officers arrived. *Id.* Plaintiff was directed to "lay down on the bed and cross [his] legs and put [his] hands behind [his] back," but he "told them no." *Id.* The officers entered Plaintiff's cell and "held" him down on the bed and "handcuffed" him behind his back. *Id.* Plaintiff He claims the officers picked him up and "just dropped me to the floor right on my face," and the officer then began "beating the crap out of me." *Id.* at 12-13.

In September 2016, Plaintiff, proceeding pro se, filed this matter, alleging claims under 42 U.S.C. § 1983 against JCDC staff members, the JCDC Director, and the Jackson County Sheriff. Doc. #1. In his Complaint, Plaintiff acknowledges JCDC had a grievance procedure, and he utilized the procedure on December 20, 2014, January 12, 2015, January 29, 2015, and June 4, 2015. *Id.* at 3. He states his "[f]inal grievance [was] rejected as unfounded." *Id.* His claims related to the events that occurred on November 12, 2014, about which Plaintiff grieved. *Id.* at 5-13; Doc. #1-1. Plaintiff alleges Defendants "are responsible for the unnecessary and wanton infliction of pain when they had beaten, degraded, tortured and humiliated the Plaintiff with the use of excessive force, verbal abuse and lack of care and concern for Plaintiff's health and well being." Doc. #1, at 16. He contends Defendants violated his rights under the Fourth, Eighth, and Fourteen Amendments, and his right to medical care. *Id.* at 16-17.

In October 2016, the Court dismissed Plaintiff's claims against certain Defendants because he failed to state a claim against those individuals. Doc. #8, at 4-5. The Court directed the two remaining Defendants, Ronnie Rahe and Lieutenant Brown, to respond to Plaintiff's Complaint. *Id.* at 5. In January 2017, Plaintiff's lawsuit was dismissed without prejudice because he did not provide the Court with addresses at which Defendants could be served. Doc. #16. Plaintiff appealed the dismissal. Doc. #18. The Eighth Circuit affirmed in part and reversed in part this Court's decision. Doc. #24. Among other things, the Eighth Circuit found Plaintiff's claims against five Defendants (Chimezie Akanuligo, Matai Ware, Jen-I E. Pulos, Ryan Arnold, and Daniel McElroy) should be reinstated. *Id.* at 2.

In September 2017, this matter was reopened, and Plaintiff's claims against Akanuligo, Ware, Pulos, Arnold, and McElroy were reinstated. Doc. #26. Service was attempted on these individuals at addresses provided by Plaintiff. Docs. #32-37. Akanuligo was served, but service was not obtained on the other Defendants. Doc. #33-37. The Court directed JCDC to provide the last known addresses for Defendants. Doc. #38. Service was attempted again. Pulos was served, but McElroy, Arnold, and Ware were not served. Doc. #42, 46-50. The Court directed Plaintiff to show cause why his claims against McElroy, Arnold, and Ware should not be dismissed due to failure to timely serve them. Doc. #51. Plaintiff did not respond, and as a result, his claims against Ware, Arnold, and McElroy were dismissed without prejudice. Doc. #53. As of May 2018, only Plaintiff's claims against Pulos and Akanuligo remained pending.

In October 2018, the Court granted Plaintiff's motion for appointment of counsel, and in November 2018, the parties were granted additional time to conduct discovery. Docs. #73, 79. On April 22, 2019, Akanuligo and Pulos filed a motion for summary judgment. Doc. #83. After Plaintiff failed to timely respond to Defendants' motion, the Court directed Plaintiff to show cause why the motion should not be granted. Doc. #84.

On May 28, 2019, Plaintiff's counsel responded to the Court's Order, stating he was "filing an *Anders* response to the motion to show cause." Doc. #85, at 1. Plaintiff's counsel stated "there is a scant argument that given Plaintiff's incarceration status he was unable to timely exhaust his administrative remedies." *Id.* at 1-2. He represented that Plaintiff could not sustain his use of force claim because there are "no non-frivolous arguments in opposition" to the motion for summary judgment. *Id.* at 2. That is, "the record is devoid of any attacks on the Plaintiff by other inmates or the showing of a[n] immediate fear for his safety." *Id.* Further, "Plaintiff created an incident by pulling on the sprinkler head," which set off the device that flooded his cell. *Id.* This incident, "coupled with Plaintiff's refusal to follow orders allows the correctional officers to apply reasonable constraints." *Id.* Defendants did not file a reply in further support of their summary judgment motion, and the time for doing so has passed.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). The Court must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984). "[A] nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Nationwide Prop. & Cas. Ins. Co. v. Faircloth*, 845 F.3d 378, 382 (8th Cir. 2016) (citations omitted). Inadmissible evidence may not be used to support or defeat a motion for summary judgment. *Brooks v. Tri-Sys., Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005) (citation omitted).

In support of their motion for summary judgment, Defendants set forth a concise statement of uncontroverted material facts, and the facts are supported by admissible evidence. Doc. # 83-1; L.R. 56.1(a); Fed. R. Civ. P. 56(c)(1). "A party opposing a motion for summary judgment must begin its opposing suggestions by admitting or controverting each separately numbered paragraph in the movant's statement of facts." L.R. 56.1(b)(1). "Unless specifically controverted by the opposing party, all facts set forth in the statement of the movant are deemed admitted for the purpose of summary judgment." *Id.*; Fed. R. Civ. P. 56(c). Plaintiff, when responding to Defendants' summary judgment motion, did not controvert any of Defendants' facts. Accordingly, Defendants' facts are deemed uncontroverted for purposes of summary judgment. L.R. 56.1(b); Fed. R. Civ. P. 56(c).

### III. DISCUSSION

Defendants argue they are entitled to summary judgment on Plaintiff's claims because he failed to exhaust his administrative remedies. To address the numerous complaints prisoners were filing in federal courts, Congress enacted the Prison Litigation Reform Act ("PLRA"). *Jones v. Bock*, 549 U.S. 199, 202 (2007). "[T]he PLRA mandates early judicial screening of prisoner complaints and requires prisoners to exhaust prison grievance procedures before filing suit." *Id.;* 42 U.S.C. § 1997e(a). A section 1983 claim is exhausted for purposes of the PLRA "when an inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits." *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014) (citation omitted).

To exhaust his claims, Plaintiff had to initiate and complete JCDC's grievance procedure. This three-step procedure included (1) making a verbal request to informally resolved an issue; (2) submitting a request for administrative remedy; (3) filing a formal grievance "within ten (10) days of the occurrence or discovery of the cause of the grievance…."; and (4) if dissatisfied with the disposition of the formal grievance, "submit a written appeal within five (5) days receipt of the adverse disposition." Doc. #83-4. All four steps must be taken for an inmate to exhaust his administrative remedies. *Id*. During his deposition, Plaintiff acknowledged he had to file a request for administrative remedy "before you do the grievance." Doc. #83-17, at 20.

It is unknown if Plaintiff made any verbal request to informally resolve his concerns about the events that transpired on November 12, 2014. Defendants do not address this issue in their brief. Nevertheless, Plaintiff's first request for administrative remedy related to the events on November 12, 2014, was submitted on December 1, 2014. Doc. #1-1, at 3; Doc. #83-17, at 20.[1] He submitted additional requests for

---

[1] Although Plaintiff contends he "wrote about" and/or "grieved" the November 12, 2014 incident before December 1, 2014, he presents no evidence establishing he submitted a request for administrative remedy before December 1, 2014. Doc. #83-17, at 23. Even if Plaintiff could present evidence of filing a request for administrative remedy before December 1, 2014, his claims would still fail because, as set forth *infra*, he failed to file a formal grievance within ten days of the events that occurred on November 12, 2014, and he failed to appeal any adverse decision within five days.

administrative remedies on December 20, 2014; January 12, 2015; and June 15, 2015. Doc. #1-1, at 4-7; Doc. #83-17, at 20, 22.

It is uncontroverted that Plaintiff did not submit a formal grievance until January 29, 2015.  Doc. #1-1, at 1; Doc. #83-17, at 19-21 (testifying his formal grievance was filed on January 29, 2015).  Although the formal grievance raises concerns with the events that occurred on November 12, 2014, Plaintiff did not file the formal grievance "within ten (10) days of the occurrence or discovery of the cause of the grievance," as required by JCDC's grievance procedure.  Doc. #83-4, at 2.

On March 19, 2015, a decision was issued with regard to Plaintiff's January 29, 2015 formal grievance.  Doc. #1-1, at 1.  Plaintiff appealed that decision on June 4, 2015.  Doc. #1-1, at 2.  Although his appeal arose from the decision issued on March 19, 2015, Plaintiff did not file his appeal within five days of receiving the adverse disposition of his formal grievance, as required by JCDC's grievance procedure.  Doc. #83-4, at 4; Doc. #83-9.

By failing to follow the grievance procedure, Plaintiff did not exhaust his administrative remedies with regard to his grievance.  Accordingly, Plaintiff's claims, which arise from his grievance, have not been administratively exhausted.  Thus, he is barred from bringing his claims in this lawsuit.  Accordingly, the Court grants summary judgment in favor of Defendants with regard to Plaintiff's claims.[2]  Because the Court grants summary judgment based upon Defendants' argument that Plaintiff failed to exhaust his administrative remedies, it is unnecessary to address Defendants' other arguments.

---

[2] In response to Defendants' motion for summary judgment, Plaintiff did not raise any argument that the grievance procedure was incapable of use.  Even if he had raised the argument, Defendants would still be entitled to summary judgment.  An administrative remedy is not capable of use when (1) the procedure operates as a dead end, (2) no ordinary prisoner could navigate the procedure, and (3) prison officials thwart inmates from taking advantage of the procedure.  *Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016).  Plaintiff's persistent use of the grievance procedure, including the fact he filed several requests for administrative remedies, a formal grievance, and an appeal indicates the procedure was capable of use.  Doc. #1-1.  For this additional reason, Defendants' motion for summary judgment is granted with regard to Plaintiff's claims due to Plaintiff's failure to administratively exhaust his claims.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment on all of Plaintiff's claims is granted.

IT IS SO ORDERED.

DATE: June 26, 2019

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT